UNITED STATES DISTRICT COURT    O
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| **CARLOS MARTINEZ** § § | |
| *Petitioner,* § | |
| VS. § | **CIVIL ACTION NO. L-08-113** |
| § | **CRIMINAL ACTION NO. L-07-1073-1** |
| § | |
| **UNITED STATES OF AMERICA** § § | |
| § | |
| *Respondent.* | |

## OPINION AND ORDER

Pending before the Court is Carlos Martinez's ("Martinez") Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody under 28 U.S.C. §2255, [Dkt. No. 1],[1] which the Court deems filed on August 11, 2008.[2] The Court concludes that it is not necessary to order the Government to respond because "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." 28 U.S.C. § 2255, Proc. R. 4(b); *see also United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983). Having duly considered the petition, supporting memorandum, and applicable law, Martinez's petition is **DENIED**.

### I.    JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §2255. Martinez's motion is timely because it was filed within one year of the date on which his judgment of conviction became final. *See* 28 U.S.C. § 2255(f)(1)(2006).

---

[1] "Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing. "Dkt. No." will be used to refer to filings in case number 5:08-cv-113. Unless otherwise noted, "Cr. Dkt. No." will be used to refer to filings in criminal case number 5:07-cr-1073. Citations to "Minute Entries" will be used to refer to entries made for criminal case number 5:04-cr-102.

[2] Although the Clerk received Martinez's motion on August 21, 2008, it is dated August 11, 2008. Thus, August 11, 2008 is the earliest date it could have been delivered to prison authorities for filing, the pertinent date for deeming a document filed by a *pro se* prisoner under *Houston v. Lack*, 487 U.S. 266, 276 (1988). *See United States v. Young*, 966 F.2d 164, 165 (5th Cir. 1992). The Court deems the petition filed as of the earlier date.

## II. FACTS AND PROCEEDINGS

On July 31, 2007, a federal grand jury in Laredo, Texas indicted Martinez in criminal case number 5:07-cr-1073 of knowingly concealing more than $10,000 in United States currency[3] in a conveyance and attempting to transport and transfer such currency from a place within the United States to a place outside of the United States with the intent to evade a currency reporting requirement under Section 5316 in violation of Title 31, United States Code, Section 5332(a) and Title 18, United States Code, Section 2. [Cr. Dkt. No. 20]. Martinez decided to forego trial and entered a plea of guilty before United States Magistrate Judge Adriana Arce-Flores. [Minute Entry of 9/11/2007; Cr. Dkt. No. 36]. The plea agreement included the following language:

> 10. In exchange for the concessions made by the Government in this agreement, the Defendant expressly waives the right to contest and/or appeal, **either directly or collaterally**, his/her guilty plea, conviction, sentence, and/or detention by means of **ANY** post conviction proceeding whatsoever. **Such waiver expressly includes, and Defendant expressly agrees not to file, ANY post-conviction proceeding whatsoever. Such waiver expressly includes, and Defendant expressly agrees not to file, ANY DIRECT and/or COLLATERAL Attacks on Defendant's guilty plea, conviction, sentence, and/or detention pursuant to any statue, law, procedure, or Constitutional provision whatsoever, including without limitation, Title 18, U.S.C., § 3742 and Title 28, U.S.C. § 2255.**
>
> In waiving those rights, Defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. Understanding this, Defendant agrees to waive the right to "collaterally attack" his/her conviction and/or sentence in any manner whatsoever, including Title 28, U.S.C. § 2255. Defendant is also aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed and/or the manner in which such sentence was determined. Understanding this, Defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined **on any grounds whatsoever, including, without limitation, those set forth in Title 18, U.S.C. § 3742.**
>
> In exchange for the Agreement with the United States, Defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that is not time barred on the date that this Agreement is signed, in the event that (a) Defendant's

---

[3] The approximate amount was $836,777.00. [Cr. Dkt. No. 36 at ¶ 3].

> conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn. [ . . . ]

[Cr. Dkt. No. 36 ¶ 10 (emphasis in original)]. The agreement was signed by Martinez and his counsel. [Cr. Dkt. No. 36 at 8].

At re-arraignment on September 11, 2007, Magistrate Judge Adriana Arce-Flores placed Martinez under oath and advised him of the rights and implications surrounding a guilty plea. *See* Fed. R. Crim. P. 11(b)(1). Specifically, Magistrate Judge Arce-Flores informed Martinez and other Defendants pleading guilty that "[e]ach of you is here this afternoon because today is the day you have decided whether to plead guilty or not guilty. All of you are here with your attorney because you want to go forward with a plea of guilty. I will remind each of you that you are under oath at this time. [Digital Recording of Sept. 11, 2007 Re-arraignment ("R. Rec.") at 1:42 PM]. Magistrate Judge Arce-Flores then read Count 1 of the indictment and asked Mr. Martinez if he understood Count 1. Martinez replied "Yes." [R. Rec. at 1:48-1:50 p.m.]. The Government then stated the maximum penalty that Martinez could face for pleading guilty. [R. Rec. at 1:50 p.m.]. Magistrate Judge Arce-Flores asked Martinez if he understood the maximum possible penalty that could be applied to his case. Mr. Martinez answered "Yes." [R. Rec. at 1:50 p.m. Magistrate Judge Arce-Flores then continued the exchange with Martinez:

> THE COURT: Mr. Martinez did you review and sign your plea bargain, sir?
>
> MARTINEZ: Yes.
>
> THE COURT: It states that in exchange for your plea of guilty they are asking the Court grant you acceptance of responsibility, that you be sentenced at the appropriate level after the reduction has been taken, that you be given an additional one level off for waiver of appeal, and that at this time the government is not taking a position on any role adjustment. Is that correct?
>
> MARTINEZ: Yes, your Honor.

> THE COURT: And that you are actually stipulating to the forfeiture of $836,777. Is that your agreement Ms. Barbare?
>
> BARBARE: It is your Honor.
>
> THE COURT: Mr. Martinez is that your complete agreement, sir?
>
> MARTINEZ: Yes.

[R. Rec. at 1:56-1:57 p.m.]. The Government then read the factual basis for the charge and asked Martinez and his counsel Cynthia Barbare if they had any corrections they wanted to make to the factual basis. Barbare, on behalf of her client, put forth two minor corrections. [R. Rec. at 2:06-2:11 p.m.]. Magistrate Judge Arce-Flores then asked

> THE COURT: With those corrections, how do you plead to the charge—are you guilty or not guilty?
>
> MARTINEZ: Guilty.
> . . .
>
> THE COURT: How old are you Mr. Martinez?
>
> MARTINEZ: 49.
>
> THE COURT: Where were you born?
>
> MARTINEZ: Hermosillo, Sonora, Mexico; Hermosillo in Sonora, Mexico.
>
> THE COURT: What kind of legal documents do you have?
>
> MARTINEZ: I am a naturalized citizen.
>
> THE COURT: Oh, you are a naturalized citizen.
>
> MARTINEZ: Yes, I have a driver's license.
>
> BARBARE: He is a naturalized citizen.
>
> THE COURT: And where do you live?
>
> MARTINEZ: Well my family lives in Carrollton and I live in Durango and both places I have traveled back and forth.

> THE COURT: And you work in Dallas?
>
> MARTINEZ: Durango.
>
> THE COURT: Did you go to school here in the United States?
>
> MARTINEZ: No ma'am.
>
> THE COURT: What is your occupation or was your occupation before this happened?
>
> MARTINEZ: I'm a promoter of race horses in Mexico.
>
> THE COURT: And have you understood what I explained to you today.
>
> MARTINEZ: Yes, ma'am.
>
> THE COURT: The Court will accept his plea of guilty, report and recommend it to the district court.  Order a PSI for him and give him a sentencing day.

[R. Rec. at 2:11-2:13 p.m.].  The District Court found that Martinez had pled guilty knowingly and voluntarily, and accepted his plea.  [Cr. Dkt. No. 43].

At the sentencing hearing on November 28, 2007, the Court sentenced Martinez to a term of sixty months imprisonment, three years of supervised release, and $125,000 fine.  The Court also indicated that because Martinez had waived his right to appeal, the judgment would become final.  [Minute Entry of 11/28/2007].  Judgment was entered on December 12, 2004.  [Cr. Dkt. No. 62].

On August 11, 2008, Martinez filed the §2255 Motion now before the Court, [Dkt. No. 1], and an accompanying Memorandum of Law.  [Dkt. No. 2].  In his motion, Martinez requests that the Court reconsider his case in light of the recent ruling of the Supreme Court in *Cuellar v. United States*, 128 S.Ct. 1994 (2008).  [Dkt No. 2 at 3-4].  Specifically, Martinez argues that the evidence presented did not establish that he acted with the intent to "conceal or disguise" the funds necessary to support a conviction.  [*Id.* at 4].  Martinez asserts, "In this case, the only

evidence introduced to prove this element showed that petitioner engaged in extensive efforts to conceal the funds en route to Mexico." [*Id.*]  Martinez also states, "The Supreme Court agreeded [sic] with the petitioner in *Cuellar v. United States* that merely hiding funds during transportation is not sufficient to violate the statute, even if substantial effort have been expended to conceal the money." [*Id.*]

## III. DISCUSSION

### A. Legal Standard under 28 U.S.C. § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam) (citing *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981)).  Generally, § 2255 claims fall under four categories: (1) constitutional issues; (2) challenges to the district court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255 (2006); *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).  After conducting an initial examination of the petition, the Court must dismiss it if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief."  28 U.S.C. § 2255, Proc. R. 4(b).

### B. Waiver of Right to Appeal and Collateral Attack

Martinez has asked the Court to re-examine his conviction in light of *Cuellar v. United States*, 128 S.Ct. 194.  The Court, however, must first determine whether Martinez's claim is foreclosed by his waiver of his right to collaterally attack his conviction and sentence.

A defendant may waive his right to appeal and collaterally attack a conviction and sentence by means of a plea agreement, so long as the waiver is both knowing and voluntary.[4] *See, e.g.*, *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005) (holding that a "knowing and voluntary" standard applies to a waiver of appeal); *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005) ("We apply normal principles of contract interpretation when construing plea agreements."); *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002); *United States v. Robinson*, 187 F.3d 516, 517-18 (5th Cir. 1999); *United States v. Dees*, 125 F.3d 261, 269 (5th Cir. 1997). A district court must first determine whether the waiver was voluntary and knowing, and then evaluate whether the waiver "applies to the circumstances at hand, based upon the plain language of the agreement." *Bond*, 414 F.3d at 544 (citing *McKinney*, 406 F.3d at 746-47); *see also United States v. Ruiz*, 536 U.S. 622, 629 (2002). A defendant knowingly enters a waiver when "the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances-even though the defendant may not know the *specific detailed* consequences of invoking it." *Ruiz*, 536 U.S. at 630 (emphasis in original).

A careful review of the record reveals no evidence that Martinez's waiver of his right to collaterally attack his conviction under § 2255 was unknowing or involuntary. First, by signing the plea agreement, Defendant acknowledged that he had reviewed it with counsel and understood its terms, including the provision in paragraph ten that he would not appeal or collaterally attack his conviction. [Cr. Dkt. No. 36]. He also acknowledged that he had entered into the agreement voluntarily and knowingly. [*Id.* at ¶ 17]. The Court also discussed with Martinez the plea agreement and its terms at a Rule 11 hearing. While the Court did not specifically inform Martinez that he could not collaterally attack his conviction, as it should have

---

[4] The Terms "knowing" and "informed" are essentially two ways to express the same thought. *See United States v. Bushert*, 997 F.2d 1343, 1350 n.16 (11th Cir. 1993).

done under Rule 11(b)(1)(N),[5] the Court did ask Martinez if he understood that under the plea agreement he could not appeal his conviction. Specifically, the Court asked:

> THE COURT: It states that in exchange for your plea of guilty they are asking the Court grant you acceptance of responsibility, that you be sentenced at the appropriate level after the reduction has been taken, that you be given an additional one level off for waiver of appeal, and that at this time the government is not taking a position on any role adjustment. Is that correct?
>
> MARTINEZ: Yes, your Honor.

[R. Rec. at 1:56 p.m.]. The Court also asked Martinez if he had reviewed and signed his plea agreement and if he understood the charge and the maximum possible penalty in the case. Martinez responded, "Yes." [R. Rec. at 1:56 p.m.]. Finally, in his Memorandum Brief in support of his motion, Martinez states, "The defendant is aware that he waived his rights to appeal or to collateril [sic] attack his sentence." [Dkt. No. 2 at 3]. This statement creates a further inference that Martinez voluntarily and knowingly waived his right to appeal or collaterally attack his conviction or sentence.

When a petitioner does not allege, and the record contains no indication that ratification of the plea agreement was involuntary or unknowing, the Court will hold the defendant to the bargain that he made--the court need not presume that the waiver was ineffective. *See White*, 307 F.3d at 343; *Bond*, 414 F.3d at 544 (citing *McKinney*, 406 F.3d at 746); *United States v. Portillo*, 18 F.3d 290, 292-93 (5th Cir. 1994) (stating that a plea agreement will be upheld where the record clearly demonstrates defendant read and understood agreement and he raised no questions regarding any waiver-of-appeal issue). Therefore, based upon the plain waiver language of Martinez's plea agreement, the Court concludes that Martinez knowingly and

---

[5] Rule 11(b)(1) states, "Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1).

voluntarily waived his right to appeal and to collaterally attack his sentence and conviction. *See Bond*, 414 F.3d at 544; *see also United States v. Wilkes*, 20 F.3d 651, 653-54 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of §2255 rights). The Court next concludes that the terms of Martinez's plea agreement extend to the current petition. *See id.* Martinez agreed not to file a petition pursuant to 28 U.S.C. § 2255. However, even if Martinez had not validly waived his rights, he would not have prevailed on the merits in having his case re-examined in light of *Cuellar v. United States*. The Court will now address this claim to explain why Martinez would not prevail.

### C. *Cuellar v. United States*

In *Cuellar*, the defendant was arrested after a search of his vehicle revealed that he had nearly $81,000 hidden beneath horsehair in a secret compartment under the floorboard of the vehicle. 128 S.Ct. at 1997-98. The defendant was driving through Texas towards the Mexican border. *Id.* at 1997. A jury then convicted the defendant under 18 U.S.C. § 1956(a)(2)(B)(i), a money laundering provision that criminalizes certain kinds of transportation of money derived from unlawful activity. *Id.* at 1998. In its review of the case, the Supreme Court focused on the "designed to conceal element" of 1956(a)(2)(B)(i). The Supreme Court held that conviction pursuant to §1956(a) "requires proof that the purpose—not merely effect—of the transportation [was designed in whole or in part] to conceal or disguise [the nature, the location, the source, the ownership or the control of the fund]." 128 S.Ct. at 2005-06. The Government does not have to prove that a defendant attempted to legitimize tainted funds but it must show that the defendant did more than just hide the money during its transport. *Id.* at 2006. In so holding, the Court quoted Judge Smith's dissent from the Fifth Circuit's opinion, that "there is a difference between concealing something to transport it and transporting something to conceal it" and reasoned that

"*how* one moves the money is distinct from *why* one moves the money. Evidence of the former, standing alone, is not sufficient to prove the latter." *Id.* at 2005 (emphasis in original).

Martinez asks the Court to re-examine his case in light of *Cuellar*, specifically the "designed to conceal" element of 18 U.S.C. § 1956(a)(2)(B)(i). But Martinez was not convicted of violating 18 U.S.C. § 1956, the money laundering statute. Rather, Martinez plead guilty to violating 31 U.S.C. § 5332(a), bulk cash smuggling into or out of the United States. [Cr. Dkt. No. 36]. While "certain conduct may fall within both statutes" as the Supreme Court noted in *Cuellar*, "the two statutes nonetheless target distinct conduct." *Id.* at 2001. Section 5332(a)(1) encompasses a defendant who "with the intent to evade a currency reporting requirement under section 5316, knowingly conceals more than $10,000 in currency or other monetary instruments . . . and transports or transfers or attempts to transport or transfer such currency or monetary instruments from a place within the United States to a place outside of the United States." 31 U.S.C. § 5332(a)(1). Section 5332(a)(1) does not contain the "design to conceal" element of 18 U.S.C. § 1956. *See id.* To violate Section 5332(a)(1), a defendant does not have to have the specific purpose entirely or partially to "conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity" by the very act of transporting the currency as one does to violate § 1956(a)(2)(B)(i). *See Cuellar*, 128 S.Ct. at 2001, 2005-06. Further, under §5332(a), a defendant also does not have to know that the funds "represent the proceeds of some form of unlawful activity," another requirement of § 1956(a)(2)(B)(i). The defendant just has to have the intent to conceal and transport in excess of $10,000 in currency in order to evade the reporting requirement under 5316. § 5332(a). Indeed, under Section 5332(a)(1), the money could have been derived from lawful proceeds.[6] *See Cuellar*, 128 S.Ct. at 2001. Finally, the defendant in *Cuellar* conceded on appeal that he had

---

[6] This is not to say that all money transported comes from lawful proceeds.

violated 31 U.S.C. §5332 by concealing and transporting $81,000 in his vehicle from Texas towards Mexico; he just argued that he did not violate §1956(a)(2)(B)(i) and the Supreme Court agreed. *See United States v. Cuellar*, 478 F.3d 282, 300 n.10 (en banc) (Smith, J. dissenting), *overturned by* 128 S.Ct. 1994 (2008). Therefore, the Supreme Court's decision in *Cuellar* does not apply to Martinez and his motion is DISMISSED.

### IV.     CONCLUSION

Petitioner's Motion to Vacate, Set Aside, or Amend Judgment is **DISMISSED** with prejudice. Any future request for a certificate of appealability is **DENIED**.

IT IS SO ORDERED.

DONE this 24th day of September, 2008, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE